# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHRISTOPHER HAVRON and KATELYN** | ) | |
| **SMITH, individually and on behalf of** | ) | |
| **all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 3:16-cv-1075** |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **YAHOO, Inc., A California Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Christopher Havron and Katelyn Smith (collectively referred to as "Plaintiffs") bring this Class Action Complaint against YAHOO, Inc. ("YAHOO"), individually and on behalf of all others similarly situated, and allege as follows, upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys and information available to the public.

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of Plaintiffs and all other similarly situated individuals against YAHOO for its failure to adequately protect the private and confidential personal information of its internet users in the United States over a period of time during late 2014, and its failure to disclose the 2014 security breach until 2016.

2.      On approximately September 22, 2016 Defendant, YAHOO disclosed a massive security breach by a "state-sponsored actor" affecting at least 500 million YAHOO subscribers.

3.      The breach includes user account information-including names, email addresses, telephone numbers, dates of birth, hashed passwords and, in some cases and encrypted or unencrypted security questions and answers.[1]

4.      Plaintiffs, who were each YAHOO subscribers at the time of the security breach in 2014 and eventual disclosure in 2016, seek recovery for YAHOO's breach of express contract, breach of implied contract, unjust enrichment, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

## THE PARTIES

5.      Plaintiff Christopher Havron is a citizen of the state of Illinois residing in Madison County, Illinois.

6.      Plaintiff Katelyn Smith is a citizen of the state of Illinois residing in Macon County, Illinois.

7.      Defendant YAHOO is a publicly traded California corporation doing business throughout Illinois and the United States and is a citizen of California, having its principal place of business in California.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and the members of the Class are citizens of a state different from Defendants.

9.      This Court has general and specific jurisdiction over Yahoo because Yahoo has sufficient minimum contacts within the State of Illinois and within the Southern District of

---

[1] *See* http://www.wsj.com/articles/yahoo-says-information-on-at-least-500-million-user-accounts-is-stolen-1474569637

Illinois, and further because certain material acts upon which the suit is based occurred within the Southern District of Illinois.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## GENERAL ALLEGATIONS

11.     YAHOO is a leading Internet Company that provides web-based services to millions of users on a monthly basis.

12.     YAHOO permits persons over the age of twelve (12) to become YAHOO subscribers and create a YAHOO account.

13.     YAHOO's website sets forth its terms of service (the "Terms of Service"), which incorporates YAHOO's privacy policy, provides that the subscriber's personal information is subject to the privacy policy, and states that YAHOO will collect and use such information as set forth in the privacy policy:

> Registration Data and certain other information about you are subject to our applicable privacy policy. For more information, see the full Yahoo Privacy Policy at https://policies.yahoo.com/us/en/yahoo/privacy/index.html. You understand that through your use of the Yahoo Services you consent to the collection and use (as set forth in the applicable privacy policy) of this information, including the transfer of this information to the United States and/or other countries for storage, processing and use by Yahoo and its affiliates.[2]

14.     YAHOO's privacy policy, which is also found on its website (the "Privacy Policy"), provides that YAHOO does not share personal information about subscribers with

---

[2] YAHOO Terms of Service, ¶ 4, *available at* https://policies.yahoo.com/us/en/yahoo/terms/utos/.

other people or non-affiliated companies except to provide products or services requested by the subscriber:

### Information Sharing & Disclosure

Yahoo does not rent, sell, or share personal information about you with other people or non-affiliated companies except to provide products or services you've requested, when we have your permission, or under the following circumstances:

- We provide the information to trusted partners who work on behalf of or with Yahoo under confidentiality agreements. These companies may use your personal information to help Yahoo communicate with you about offers from Yahoo and our marketing partners. However, these companies do not have any independent right to share this information.[3]

15.     The Privacy Policy also provides that YAHOO limits access to personal information and that it has physical, electronic, and procedural safeguards to protect personal information:

### Confidentiality & Security

We limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs.

We have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you.[4]

16.     In using YAHOO, Plaintiff and Class members were requested by YAHOO to confide and make available to YAHOO its agents, and employees, private and confidential information, including their names, email addresses, dates of birth, hashed passwords and encrypted or unencrypted security questions and answers.

---

[3] YAHOO Privacy Policy, *available at*
https://policies.yahoo.com/us/en/yahoo/privacy/index.htm.
[4] *Id.*

17.     This information was entrusted to YAHOO for the purpose of effectuating the growth of its business with the increase of its users and with the expectation and implied mutual understanding that YAHOO would strictly maintain the confidentiality of the information and safeguard it from theft or misuse.

18.     Once a person is signed up as a YAHOO subscriber, they may access their YAHOO account to perform various activities including *inter alia* playing fantasy sports games.

19.     When accessing the fantasy sports page, YAHOO offers logged-in subscribers the opportunity to purchase sporting merchandise and to play fantasy sport games that cost money.

20.     Subscribers can pay for these items by credit card.  When signing up to pay for these activities, YAHOO's default setting is to "Remember Card," meaning it saves the subscriber's credit card information.

21.     Subscribers can also pay for these items using the subscriber's PayPal Wallet account, which is also auto-saved by YAHOO.  A PayPal Wallet account is linked to an existing financial account and allows money to be sent from a mobile device or desktop computer.

22.     In late 2014, YAHOO suffered a massive security breach affecting at least 500 million subscribers—the largest-ever publicly disclosed data breach.[5]

23.      As a result of the security breach, certain account information, including names, email addresses, telephone numbers, dates of birth, hashed passwords, and encrypted or unencrypted security questions and answers, was stolen from YAHOO's network.[6]

---

[5] http://www.wsj.com/articles/yahoo-says-information-on-at-least-500-million-user-accounts-is-stolen-1474569637.
[6] *Id.*

24.     In August 2016, a hacker named "Peace" appeared in online forums offering to sell 200 million of YAHOO's usernames and passwords.  YAHOO responded at the time that it was aware of the claim.[7]

25.     On information and belief, YAHOO did not publicly announce the security breach until September 22, 2016.

26.     In 2012, YAHOO was similarly but not as abundantly hacked by a group aiming to publicly humiliate YAHOO for its lax security measures "as a wake-up call and not as a threat." [8]  The 2012 security breach infiltrated a YAHOO database and posted login credentials from over 450,000 accounts.

27.     Given the 2012 breach, YAHOO should have increased its protective and security measures to prevent the instant massive breach.

28.     Upon information and belief, the instant security breach was caused and enabled by YAHOO's knowing violation of its obligations to abide by best practices and industry standards to take reasonable precautions and implement reasonable technical measures to protect plaintiff's personal information, including e-mail addresses, from unauthorized access, erroneous disclosure and unlawful interception.

29.     Upon information and belief, YAHOO has also failed to disclose the nature and extent of the security breach and notify its affected customers in a timely manner. By failing to provide adequate notice, YAHOO has prevented (and continues to prevent) class members from protecting themselves from the security breach.

---

[7] *Id.*
[8] *Id. See also*
http://www.wsj.com/articles/SB10001424052702304373804577522613740363638.

30.     Plaintiffs are currently YAHOO subscribers and have each been Yahoo subscribers since prior to 2014.

31.     Upon information and belief, Plaintiffs' personal information was stolen in late 2014 as a result of the above-described security breach.

32.     Accordingly, Plaintiffs, on behalf of themselves and other members of the Class, asserts claims for breach of express contract, breach of implied contract, unjust enrichment and violation of the Illinois Consumer Fraud and Deceptive Business Practice Act 815 ILCS 505/1, *et. seq*. ("ICFA") and seeks injunctive relief , declaratory relief, monetary damages, statutory damages, and all other relief as authorized in equity or by law.

## CLASS ALLEGATIONS

33.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similarly situated, as representative of the following class (the "National Class"):

> All persons in the United States who had personal information stolen from YAHOO's network in 2014.

34.     For purposes of the unjust enrichment and ICFA claims set forth below, Plaintiffs also assert a subclass (the "Subclass") defined as:

> All persons who are Illinois citizens who had personal information stolen from YAHOO's network in 2014. [9]

35.     Excluded from the Class are affiliates, predecessors, successors, officers, directors, agents, servants, or employees of YAHOO, and the immediate family members of such persons.  Also excluded are any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action.

---

[9] Unless otherwise noted, the Class and the Subclass are collectively referred to as the "Class."

36.     Plaintiffs are members of the Classes which they seek to represent.

37.     The particular members of the Classes are capable of being described without difficult managerial or administrative problems.  The members of the Classes are readily identifiable from the information and records in the possession or control of YAHOO.

38.     Upon information and belief, the Classes consist of at least hundreds of individuals and therefore each is so numerous that joinder is impracticable.

39.     Plaintiffs' claims are typical of those in the Classes and are based on the same legal and factual theories.

40.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual class members, and, in fact, the wrongs suffered and remedies sought by Plaintiffs and the other members of the Class are premised the same underlying facts and circumstances surrounding YAHOO's inadequate data security and subsequent breach of YAHOO's data security system.  The principal common issues include, but are not limited to, the following:

    a.    Whether YAHOO had a legal and/or contractual duty to use reasonable security measures to protect Plaintiffs' and Class members' personal information;

    b.    Whether YAHOO took reasonable steps and measures to safeguard Plaintiffs' and Class members' personal information;

    c.    Whether YAHOO breached its duty to exercise reasonable care in handling Plaintiffs' and Class members' personal information;

    d.    Whether implied contracts existed between YAHOO, on the one hand, and Plaintiffs and the Class members on the other;

    e.    Whether YAHOO has and has been unjustly enriched by its delayed notification to subscribers regarding the 2014 security breach;

    f.    Whether YAHOO violated ICFA by failing to properly handle and protect Plaintiffs' and Class members' personal information;

g.    Whether YAHOO violated ICFA by failing its delayed notification to subscribers regarding the 2014 security breach;

h.    The method of determining the damages to which YAHOO is liable for negligence, breach of implied contract, unjust enrichment, and/or violation of ICFA.

41.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs are ready, willing, and able to serve as class representatives.  Furthermore, Plaintiffs' counsel is experienced in handling class actions and actions involving unlawful commercial practices.  Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

42.    Certification of a plaintiff class under Federal Rule of Civil Procedure 23(b)(3) is appropriate in that the Plaintiffs and the Class members seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy.  A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.  Moreover, the individual Class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against this defendant.

43.    Alternatively, certification of a plaintiff class under Federal Rule of Civil Procedure 23(b)(1) is appropriate in that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for the defendant or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

44.     Certification of a plaintiff class under Federal Rule of Civil Procedure 23(b)(2) is appropriate in Plaintiffs also seek injunctive or declaratory relief to prevent future security breaches and Yahoo acted or refused to act on grounds generally applicable to the Class.

45.     Certification of issues classes under Federal Rule of Civil Procedure 23(c)(4) is also appropriate.

## COUNT I
## BREACH OF EXPRESS CONTRACT

46.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

47.     As set forth above, when Plaintiffs subscribed to YAHOO, the Terms of Service and Privacy Policy provided that YAHOO would "not rent, sell, or share personal information about you with other people or non-affiliated companies" and that it would "limit access to personal information about you to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs."

48.     The Terms of Service and Privacy Policy also provided that YAHOO had "physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about [subscribers]."

49.     Upon information and belief, YAHOO failed to adequately safeguard and protect the personal information of Plaintiffs and Class members, so that one or more unauthorized third party was able to obtain access to such personal information within YAHOO's network in late 2014.

50.     YAHOO's lack of adequate security enabled the unauthorized third party(ies) to access YAHOO's network, which then provided them with access to the subscribers' personal

information, and possibly other electronic information then in transit or temporarily and permanently stored on the network.

51.     Upon information and belief, YAHOO did not adequately monitor its technology systems for the presence of foreign software or other malicious intrusions in a manner that would enable it to detect this intrusion, such that the security breach and diversion of subscribers' personal information was able to continue unnoticed.

52.     In permitting a security breach of 500 million subscribers, which constitutes approximately one-half of total subscribers, YAHOO breached the express terms of its Terms of Service and Privacy Policy.

53.     As a result of the breach of contract, Plaintiffs and members of the Class suffered and will continue to suffer damages including, but not limited to, loss of their personal information, loss of money, the objectively reasonable likelihood of identity theft and/or fraudulent purchases, and loss of money and costs incurred as a result of increased risk of identity theft and fraudulent purchases, all of which have ascertainable value to be proven at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT

54.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

55.     When they became YAHOO subscribers, Plaintiffs and Class members entered into implied contracts with YAHOO under which YAHOO requested personal information for the purpose of increasing its revenues, Plaintiffs and the Class members provided such personal information to receive YAHOO's services, and YAHOO agreed to safeguard and protect all personal information of Plaintiffs and the Class.

56.     Plaintiffs and the Class members, and any other reasonable person, would not have entrusted their personal information to YAHOO in the absence of such an implied contract with YAHOO.

57.     YAHOO breached the implied contracts they had made with Plaintiffs and Class members by failing to safeguard the personal information of Plaintiffs and the Class and permitting unauthorized third party(ies) to access the personal information of 500 million YAHOO subscribers.

58.     As a direct and proximate result of YAHOO's breach of these implied contracts, Plaintiffs and members of the Class suffered and will continue to suffer damages including, but not limited to, loss of their personal information, loss of money, the objectively reasonable likelihood of identity theft and/or fraudulent purchases, and loss of money and costs incurred as a result of increased risk of identity theft and fraudulent purchases, all of which have ascertainable value to be proven at trial.

**COUNT III**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

59.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

60.     YAHOO's express and/or implied contract with the Plaintiffs and the Class members includes the implied covenant of good faith and fair dealing in which YAHOO owed Plaintiff and the Class members the duty to promptly notify them if their personal information had been compromised, stolen, or accessed by an unauthorized third party.

61.     YAHOO breached its duty of good faith and fair dealing to the Plaintiffs and the Class by waiting approximately two years after the security breach to notify its subscribers that

the breach had occurred and to identify what information had been accessed.  Upon information and belief, the full extent of the security breach has still not been fully disclosed.

62.    Because of YAHOO's delay in notifying its subscribers of the security breach, at the expense of its subscribers, it was able to avoid lost revenue and decreasing stock values, which likely increased its profits during this period, including from YAHOO's sale to Verizon for $4.83 billion that was announced on July 25, 2016.[10]

63.    As a result of YAHOO's breach of the covenant of good faith and fair dealing, Plaintiffs and the Class suffered and will continue to suffer damages including, but not limited to, loss of their personal information, loss of money, the objectively reasonable likelihood of identity theft and/or fraudulent purchases, and loss of money and costs incurred as a result of increased risk of identity theft and fraudulent purchases, all of which have ascertainable value to be proven at trial.

## COUNT IV
## RESTITUTION/UNJUST ENRICHMENT

64.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

65.    By providing their personal information to YAHOO, Plaintiffs and the Class members have conferred a monetary benefit on YAHOO because YAHOO is able to sell that information to authorized third-parties, including advertisers, who then provide advertisements and other content to the YAHOO subscribers.  YAHOO's value is also affected by the number of YAHOO subscribers.

66.    Although the security breach occurred in late 2014, YAHOO did not notify its subscribers of the extent and nature of the compromised personal information affected by the

---

[10] *See* http://www.businessinsider.com/verizon-acquires-yahoo-2016-7.

breach until September 22, 2016. Upon information and belief, the full extent of the security breach has still not been fully disclosed.

67.     Because of YAHOO's two-year delay in notifying its subscribers of the security breach, at the expense of its subscribers, it was able to avoid lost revenue and decreasing stock values, which likely increased its profits during this period, including from YAHOO's sale to Verizon for $4.83 billion that was announced on July 25, 2016.

68.     YAHOO appreciates and/or has knowledge of such benefit.

69.     YAHOO has retained the portion of revenue generated from Plaintiffs' and the Class members' personal information despite its failure to adequately protect such information.

70.     YAHOO has also retained the portion of revenue generated from its delay in notifying Plaintiffs and the Class members about the 2014 security breach.

71.     As a result, YAHOO is unjustly enriched at the expense of Plaintiffs and the Class.

72.     Under principles of equity and good conscience, YAHOO should not be permitted to retain such revenues at the expense of Plaintiffs and the Class members because YAHOO failed to implement adequate data management and security measures to protect the personal information of Plaintiffs and the Class from being accessed, intercepted, diverted, and/or used by unauthorized third party(ies), and then delayed for two years before notifying its subscribers about the breach.

73.     Accordingly, Plaintiffs and the Class seek full disgorgement and restitution of the amounts YAHOO has retained and/or earned as a result of the unlawful and/or wrongful conduct alleged herein, an amount which will be proved at trial.

## COUNT V
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICE ACT

74.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth above.

75.     Section 2 ICFA prohibits "unfair or deceptive acts or practices…in the conduct of any trade or commerce…." 815 ILCS 505/2.

76.     This section also outlaws "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact …." 815 ILCS 505/2.

77.     That section also provides: "In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act [15 U.S.C. § 45(a)]." 815 ILCS 505/2.

78.     In determining whether a practice is unfair in violation of Section 5(a) of the Federal Trade Commission Act, the Federal Trade Commission also considers whether the practice is unethical, and, accordingly, so do Illinois courts in determining whether a practice is unfair in violation of the ICFA. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 961 (2002).

79.     YAHOO intended for Plaintiffs and the other members of the Class to rely on YAHOO to protect the personal information furnished to it in connection with their YAHOO account, in such manner that the personal information would be protected, secure, and not susceptible to access from unauthorized third parties.

80.     YAHOO instead handled Plaintiffs' and the Class members' personal information in such manner that it was compromised.

81.     YAHOO also intended for Plaintiffs and the other members of the Class to rely on YAHOO to promptly notify them if YAHOO knew that the personal information of its subscribers had been stolen, compromised, or accessed by unauthorized third-parties.

82.     YAHOO instead waited two years after the security breach to notify subscribers that their personal information had been accessed and to provide details about what information had been compromised.  Upon information and belief, the full extent of the security breach has still not been fully disclosed.

83.     YAHOO failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.  In fact, YAHOO was "warned" in 2012 when it suffered a security breach on a much smaller scale.

84.     It was foreseeable that YAHOO's willful indifference or negligent course of conduct in handling its subscribers' personal information would put that information at risk of compromise by data thieves.

85.     YAHOO benefited from mishandling its subscribers' personal information because, by not taking preventative measures that would have avoided the data from being compromised, YAHOO saved on the cost of those security measures.

86.     Because of YAHOO's two-year delay in notifying its subscribers of the security breach, at the expense of its subscribers, it was able to avoid lost revenue and decreasing stock values, which likely increased its profits during this period, including from YAHOO's sale to Verizon for $4.83 billion that was announced on July 25, 2016.

87.     YAHOO's acts and omissions were intended to induce Plaintiffs and the Class members' reliance on YAHOO's deception that their personal information was secure and

protected, to increase the number of YAHOO subscribers, and, ultimately, to increase YAHOO's revenues.

88.     Plaintiffs and the Class members were deceived by YAHOO's failure to properly implement adequate, commercially reasonable security measures to protect their personal information, and YAHOO's failure to promptly notify them of the security breach.

89.     YAHOO violated 815 ILCS 505/2 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs' and the Class members' personal information.

90.     YAHOO's acts or practice of failing to employ reasonable and appropriate security measures to protect subscribers' personal information offends public policy as it constitutes violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and, therefore, an unfair practice under ICFA.

91.     YAHOO further violated 815 ILCS 505/2 by making material misrepresentations to its subscribers and by omitting to inform its subscribers of the security breach for two years, in order to increase YAHOO's revenues.

92.     YAHOO's failure to properly implement adequate commercially reasonable security measures to protect Plaintiffs' and the Class members' personal information, and YAHOO's two-year delay in notifying subscribers of the breach was immoral, unethical, oppressive, and unscrupulous so as to constitute an unfair practice under ICFA.

93.     YAHOO's failure to properly implement adequate commercially reasonable security measures to protect Plaintiffs' and the Class members' personal information, and YAHOO's two-year delay in notifying subscribers of the breach has caused substantial injury to Plaintiffs and the Class members.

94.    The aforementioned unfair practices by YAHOO are not offset by countervailing benefits to consumers or competition and are not reasonably avoidable by consumers.

95.    As a direct and proximate cause of YAHOO's conduct, Plaintiffs and the Class suffered and will continue to suffer damages including, but not limited to, loss of their personal information, loss of money, the objectively reasonable likelihood of identity theft and/or fraudulent purchases, and loss of money and costs incurred as a result of increased risk of identity theft and fraudulent purchases, all of which have ascertainable value to be proven at trial.

96.    815 ILCS § 505/10 permits the Court to enter injunctive relief to prevent YAHOO's continued violation of the law by implementing adequate commercially reasonable security measures to protect Plaintiffs' and the Class members' personal information and procedures to promptly identify security breaches and provide notice to affected subscribers.

97.    815 ILCS § 505/10 permits the Court to enter injunctive relief requiring YAHOO to pay for identity theft and credit card fraud monitoring services for Plaintiffs and the Class.

98.    YAHOO's conduct as aforesaid was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiffs and others similarly situated and, therefore, warrants the imposition of punitive damages.

99.    Plaintiffs have been forced to hire attorneys to enforce her rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, seeks the following relief:

A.   certification of the Class and Subclass pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4);

B.   awarding Plaintiffs and the proposed Class members damages;

C.   awarding Plaintiffs and the proposed Class members Class injunctive relief as permitted by law or equity, including enjoining YAHOO from continuing the unlawful practices as set forth herein, ordering YAHOO to fully disclose the extent and nature of the security breach, and ordering YAHOO to pay for not less than three years of identity theft and credit card monitoring services for Plaintiff and the Class;

D.   awarding Plaintiffs and the proposed Class members punitive damages, as allowable by law, in an amount to punish YAHOO's egregious conduct as set forth above and to deter YAHOO and others from engaging in similar conduct;

E.   awarding attorneys' fees and costs;

F.   awarding pre-judgment and post-judgment interest, as allowable by law, and

G.   providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury as to all issues stated herein, and all issues so triable.

Dated: September 22, 2016                    Respectfully submitted,

**GOLDENBERG HELLER &
ANTOGNOLI, P.C**

By: /s/ Kevin P. Green
Mark C. Goldenberg #00990221
Thomas P. Rosenfeld # 06301406
Ann E. Callis #06203933
Kevin P. Green #06299905
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
618-656-6230 (fax)
mark@ghalaw.com
tom@ghalaw.com
acallis@ghalaw.com
kevin@ghalaw.com